# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 13-CV-330 (JFB)

———————————

## BARBARA A. TORRES,

Plaintiff,

VERSUS

## COMMISSIONER OF SOCIAL SECURITY,

Defendant.

———————————

**MEMORANDUM AND ORDER**
January 9, 2014

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Barbara A. Torres ("plaintiff" or "Torres") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("SSA"), challenging the final decision of the Commissioner of Social Security ("defendant" or "Commissioner") denying plaintiff's application for disability insurance benefits and supplemental security income. An Administrative Law Judge ("ALJ") found that plaintiff had the residual functional capacity to perform sedentary work of a simple and unskilled nature, that plaintiff could perform a significant number of jobs in the national economy, and, therefore, that plaintiff was not disabled. The Appeals Council denied plaintiff's request for review.

The Commissioner now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings, alleging that the ALJ erred by: (1) failing to accord the proper weight to the opinion of plaintiff's treating physician, and, relatedly, failing to develop an adequate record before assessing the weight of that opinion; (2) applying the incorrect legal standard in determining plaintiff's credibility; (3) failing to employ a vocational expert to determine whether plaintiff could perform work that is available in the national economy; and (4) failing to give adequate consideration to plaintiff's obesity.

For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's cross-motion for judgment on the pleadings is denied, but plaintiff's motion to remand is granted. Accordingly, the case is remanded to the ALJ for further proceedings consistent with this Memorandum and Order. Remand is warranted because the ALJ failed to explain

the weight he assigned to the opinion of plaintiff's treating physician, Dr. Hussain.[1] In particular, it appears that the ALJ gave no weight to the portion of the treating physician's opinion that concluded that plaintiff was only capable of working twenty hours per week. However, the only explicit reason given for rejecting that portion of the opinion was that, according to the ALJ, Dr. Hussain pointed to "no evidence" with respect to that opinion. As a threshold matter, in apparently rejecting that opinion, the ALJ never obtained the treatment records from Dr. Hussain to compare his opinions against the underlying evidence to determine whether there was evidence supporting it. In any event, Dr. Hussain based his opinions as a whole on the MRI imaging of plaintiff's lumbar and cervical spine, as well as examination findings that included positive straight leg raising tests. The ALJ did not specifically address such evidence in rejecting a critical portion of Dr. Hussain's opinion. Moreover, the ALJ did not explicitly apply and weigh the various factors that must be considered in determining how much weight to give an opinion of a treating physician including, *inter alia*, (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; and (iv) whether the opinion is from a specialist. Thus, although the ALJ cited other medical evidence which supported his position, he did not apply all of the above-referenced factors or specifically explain how that other evidence undermines the treating physician's opinion regarding plaintiff's inability to work more

than twenty hours per week. Accordingly, a remand on that issue is warranted.

## I. BACKGROUND

### A. Factual Background

The following summary of the relevant facts is based upon the Administrative Record ("AR") developed by the ALJ. A more exhaustive recitation of the facts is contained in the parties' submissions to the Court and is not repeated herein.

#### 1. Plaintiff's Work History

Plaintiff was born in 1969 (AR at 41), and has a high school education (*id.* at 213). She worked as a certified nursing assistant for approximately fifteen years, from 1994 to September 18, 2009. (*Id.* at 44–46, 207–08.) During that time period, she also performed part-time work as a secretary, telemarketer, and tax preparer. (*Id.* at 44–45.)

#### 2. Plaintiff's Medical History

Plaintiff's medical records show that she is an obese woman who suffers a variety of physical and mental maladies, including neck and back pain, a ganglion cyst on her left foot, arthritis, gastroesophageal reflux disease (GERD), asthma, sleep apnea, migraine headaches, anxiety, and depression.

Plaintiff claims that her disabling condition began on September 18, 2009. (*Id.* at 189, 193.) However, she started experiencing many of the above-mentioned medical issues before that date. For instance, plaintiff's medical records show that she has been treated for gastrointestinal issues (including GERD) and obesity since 2005. (*See id.* at 429–67.) In March 2007, plaintiff was also diagnosed with a heel spur on her

---

[1] Because the Court determines that this case should be remanded for the reasons discussed herein, the Court need not address plaintiff's argument that the ALJ should have used a vocational expert. *Branca v. Comm'r of Soc. Sec.*, No. 12-CV-643 (JFB), 2013 WL 5274310, at *1 n.1 (E.D.N.Y. Sept. 18, 2013).

2

left foot, for which she was given a left heel injection. (*Id.* at 344–45.)

As for plaintiff's back pain, the record shows that plaintiff first sought medical treatment for lower back pain on April 18, 2007. (*Id.* at 338.) She reported that her job required heavy lifting, and that she had to leave work early due to lower back pain. She was experiencing muscle spasms, but she could bend at the waist, and her neurological exam was normal. (*Id.*) She was diagnosed with low back pain, acute strain, and obesity, and prescribed physical therapy and medication. (*Id.* at 338–40.) Dr. Amanda Goins wrote a note to plaintiff's employer, stating that plaintiff should not lift more than twenty pounds for the following two weeks. (*Id.* at 340.) A few weeks later, on May 3, 2007, plaintiff again sought medical care for back pain. (*Id.* at 335–36.) Examination showed tenderness and straight leg raising positive at sixty degrees, and an x-ray of her lower spine revealed no acute findings. (*Id.*) Again, plaintiff was prescribed medication and referred to physical therapy. (*Id.* at 337.)

On March 11, 2008, plaintiff visited the Palmetto Health Richland Family Medicine Center ("Palmetto") in South Carolina, because she had been experiencing left knee pain for the past two weeks. (*Id.* at 535–38.) Dr. Elizabeth Baxley ("Dr. Baxley") examined plaintiff, observed that plaintiff was limping, and prescribed medication for the knee pain. (*Id.*) One month later, plaintiff slipped and hyperextended her left knee. (*Id.* at 531.) She saw Dr. Baxley on April 15, 2008, and Dr. Baxley observed that plaintiff was wheelchair bound and in pain. (*Id.*) Dr. Baxley diagnosed a left knee sprain and prescribed medication. (*Id.* at 532.) The following month, plaintiff returned to Palmetto several times for her left knee, and Dr. Baxley diagnosed a

medial meniscus tear in the left knee. (*Id.* at 520–30.)

Plaintiff then visited Dr. James O'Leary ("Dr. O'Leary"), an orthopedic surgeon, for bilateral knee pain on May 13, 2008. (*Id.* at 371.) Dr. O'Leary diagnosed bilateral knee pain, a suspected medial meniscal tear in her left knee, and obesity, and he recommended arthroscopic meniscal surgery. (*Id.*) Dr. O'Leary performed the surgery on May 28, 2008. (*Id.* at 381–82.) His notes indicate that surgery was difficult because plaintiff's body mass index was approximately 48.5. (*Id.* at 382.)

On September 16, 2008, plaintiff returned to Dr. O'Leary, reporting that her knees were "doing very well" but that her back and neck were "killing her." (*Id.* at 375.) Dr. O'Leary examined plaintiff and observed "some tenderness over the cervical and lumbar spine with limited [range of motion]." (*Id.*) He recommended that plaintiff continue her exercise and weight loss program, and that she continue to take anti-inflammatory medicine. (*Id.*) Plaintiff returned to Dr. O'Leary one month later for sustained neck and back pain. (*Id.* at 374.) She told Dr. O'Leary that she had injured her neck and back two months earlier, after being assaulted at work. (*Id.*) Dr. O'Leary again detected a limited range of motion in the cervical and lumbar spine. (*Id.*). He noted that x-rays of her back and neck showed "well-preserved disc spaces with normal alignment and no fracture." (*Id.*) He diagnosed cervical spine strain, lower back strain, and obesity, and advised her to stay home from work. (*Id.*) On November 18, 2008, plaintiff saw Dr. O'Leary again, complaining that she was "hurting all over" and could not do household chores. (*Id.* at 378.) Dr. O'Leary reviewed an MRI of the cervical and lumbar spine, which showed "mild disc bulges at C5-6 and C6-7 without significant spinal stenosis," "a disc bulge at

L4-5 which [was] apparently a contained herniation on the right," and "a disc bulge at L5-S1." (*Id.*) Dr. O'Leary diagnosed disc bulges at L4-5 and L5-S1, mild cervical degenerative disc disease, and obesity. (*Id.*)

On December 17, 2008, Dr. M. David Redmond administered electromyography ("EMG") testing after plaintiff reported numbness and tingling in her right hand. (*Id.* at 379.) EMG testing showed mild right carpal tunnel syndrome. (*Id.* at 380.)

Plaintiff saw Dr. Brett Gunter ("Dr. Gunter"), a neurosurgeon, for her neck and lower back pain on January 5, 2009. (*Id.* at 425–26.) After reviewing MRIs of her spine, Dr. Gunter noted that he could not explain the extent of plaintiff's symptoms because her MRIs did not show any nerve root compression. (*Id.* at 426.) On March 13, 2009, Dr. Gunter had a physical therapist administer a functional capacity examination. (*Id.* at 427.) The physical therapist reported to Dr. Gunter that plaintiff's "cervical and lumbar range of motion are limited," and opined that her lifting abilities qualified her for "light to limited medium work." (*Id.*) Five days later, Dr. Gunter examined plaintiff and concluded that she had "reached Maximum medical improvement," that he had "no reason, physically to restrict or limit her job activities," and that she was "capable of medium duty work based on the U.S. Dept. of Labor guidelines." (*Id.* at 405.)

On September 24, 2009, plaintiff sought medical attention for pain in her left foot. (*Id.* at 474.) Dr. Linwood Watson ordered an x-ray of plaintiff's left foot, which showed no fracture or dislocation, normal osseous mineralization, no significant soft tissue abnormality, and a large calcaneal spur. (*Id.*) On November 19, 2009, plaintiff visited WakeMed Emergency Services in Raleigh, North Carolina, again complaining of left

foot pain. (*Id.* at 481.) Plaintiff explained that, after having been treated for left foot pain in September 2009, she had worn a cast shoe, and the pain "completely improved." (*Id.* at 485.) Dr. Susan Yocum ("Dr. Yocum") examined plaintiff and noted a one centimeter by one-half centimeter mass on plaintiff's left foot, which was consistent with a ganglion cyst. (*Id.*) Otherwise, plaintiff had full range of motion in her ankle and toes. (*Id.*) An x-ray of plaintiff's left foot showed mild soft tissue swelling, normal alignment of the osseous structures, no fractures, mild joint space loss in the interphalangeal joints, and a small plantar spur. (*Id.* at 486.) Dr. Yocum diagnosed plaintiff with a ganglion cyst and prescribed Naprosyn and Percocet. (*Id.* at 487.) Plaintiff saw Dr. Mark Wood ("Dr. Wood"), an orthopedic surgeon, for her foot pain several days later, on November 23, 2009. (*Id.* at 579.) Dr. Wood noted that plaintiff was obese, had pinpoint pain over the proximal aspect of her fifth metatarsal, and had a small nodular structure that was palpable and tender. (*Id.*) X-rays of the left foot showed no obvious calcific density or masses and no bony changes. (*Id.*) Dr. Wood diagnosed left foot pain and a possible ganglion cyst. (*Id.*)

Plaintiff also mentioned her lower back pain to Dr. Wood, and Dr. Wood discussed physical therapy for her back. (*Id.*) Plaintiff responded that she was not interested in physical therapy at that time. (*Id.*)

On February 9, 2010, after plaintiff applied for disability insurance benefits and supplemental security income, Dr. Robert Gardner ("Dr. Gardner") reviewed plaintiff's medical records and assessed plaintiff's residual functional capacity. (*Id.* at 107.) In Dr. Gardner's opinion, plaintiff was capable of lifting twenty pounds occasionally and ten pounds frequently, could stand and walk for about six hours in

an eight-hour workday, and could sit for about six hours in an eight-hour workday. (*Id.*) Plaintiff's ganglion cyst and left knee arthroscopy limited her ability to push or pull with her left foot and leg. (*Id.*) "[M]ild disc bulges" in her cervical and lumbar spine occasionally limited her ability to bend at the waist. (*Id.* at 108.) Dr. Henry Perkins ("Dr. Perkins"), a state agency psychological consultant, also reviewed plaintiff's medical records and performed a Psychiatric Review Technique. (*Id.* at 105–06.) Dr. Perkins spoke to plaintiff and learned that she had been taking Concerta for anxiety, and that she felt it was helping her. (*Id.* at 105.) Dr. Perkins opined that plaintiff's physical impairments were the main cause of her functional limitations, and that her allegations of anxiety were only "partially credible." (*Id.* at 106.)

Plaintiff then began treatment at the REX Family Practice of Knightdale, North Carolina, where she reported a history of musculoskeletal pain, anxiety, GERD, asthma, and sleep apnea to Dr. Jamila Battle ("Dr. Battle"). (*Id.* at 588.) An examination revealed a positive Spurling's test and a ganglion cyst on plaintiff's left foot. (*Id.* at 589.) Dr. Battle also ordered x-rays of plaintiff's back. Dr. Jerry Watson ("Dr. Watson") examined the x-ray of plaintiff's lumbar spine and observed that plaintiff's vertebral body heights were normal, there was minimal disc space narrowing at L4-5, minimal endplate overgrowth at several levels, no fracture, no spondylolysis, and no spondylolisthesis. (*Id.* at 592.) Dr. Watson concluded that there were "[m]inimal degenerative changes" in plaintiff's lumbar spine. (*Id.*) As for plaintiff's cervical spine, Dr. Watson found loss of the usual cervical lordosis, mild disc space narrowing with endplate overgrowth at C5-6 and C6-7, mild foraminal stenosis on the right at C6-7 and on the left at C5-6, normal vertebral body heights, and normal bone mineralization.

(*Id.* at 593.) Dr. Watson opined that plaintiff had "[m]ild cervical spondylosis." (*Id.*) Plaintiff returned to Dr. Battle for a follow-up appointment on March 15, 2010. (*Id.* at 586.) Plaintiff continued to suffer musculoskeletal pain and paresthesia. (*Id.*) Dr. Battle referred plaintiff to an orthopedic specialist and scheduled her for a sleep study. (*Id.*)

At the reference of Dr. Battle, plaintiff saw Dr. Cary Idler ("Dr. Idler"), an orthopedist, on April 15, 2010. (*Id.* at 620.) Plaintiff complained of numbness and tingling "going down into her arms and hands as well as back and leg pain." (*Id.*) She explained that these symptoms had gradually become worse over the preceding four months. (*Id.*) She reported that she was unable to lift most things, her hand would go numb after writing for long periods of time, and she could not walk outside from her house to her mailbox without experiencing back pain. (*Id.*) Dr. Idler observed that plaintiff "was able to get up from a seated position with a fair amount of difficulty," she had "some mild nerve tension sign on the left," normal reflexes in the bilateral upper and lower extremities, and "5/5 strength in all muscle groups in her arms and her legs." (*Id.*) Dr. Idler concluded that plaintiff was presenting symptoms "consistent with radicular symptoms in both her arms and her legs," but that she was not showing any weakness. (*Id.* at 621.) Dr. Idler ordered a lumbar and cervical MRI, and prescribed physical therapy. (*Id.*)

Dr. Battle also referred plaintiff to Dr. Christopher Schwarz ("Dr. Schwarz"), a gastroenterologist, whom plaintiff visited on March 23, 2010. (*Id.* at 550.) Plaintiff complained of GERD, hiatal hernia, abdominal pain prior to passing stool, constipation, and diarrhea. (*Id.*) She indicated that she was doing reasonably well on Kapidex medication, but that she had run

out of it and had difficulty obtaining more. (*Id.*) Dr. Schwarz diagnosed her with GERD, which appeared to him to be well controlled with Kapidex. (*Id.*)

Plaintiff returned to Dr. Battle on May 24, 2010, complaining of neck and back pain precipitated by a flare that occurred during a yard sale, left shoulder and elbow pain, GERD that was worsening on Kapidex, an increasingly depressed mood, and worsening anxiety. (*Id.* at 603–04.) Dr. Battle ordered an x-ray of plaintiff's left elbow and left shoulder. (*Id.* at 615.) The x-rays revealed mild spur formation involving the proximal ulna, no fracture or bony displacement, and no significant joint effusion. (*Id.*) In the opinion of Dr. Donald Detweiler ("Dr. Detweiler"), plaintiff suffered from "[m]ild degenerative changes at the left elbow without focal bony lesion or fracture." (*Id.*)

Plaintiff returned to Dr. Idler for a follow-up examination on June 3, 2010. (*Id.* at 619.) She was experiencing numbness and pain in her arms, as well as lower back pain. (*Id.*) That morning, she had been unable to cut her breakfast sausage because she could not hold her knife and fork. (*Id.*) Dr. Idler noted that plaintiff had lumbar and cervical MRIs dated May 5, 2010. The cervical MRI revealed degenerative disc at C5-6 and C6-7. At C5-6, there was a "broad bulge, moderate disc osteophyte complexes causing a moderate amount of bilateral foraminal stenosis. (*Id.*) At C6-7, there was moderate foraminal stenosis. (*Id.*) The lumbar MRI showed degenerative disc at L5-S1 and L4-5. At L5-S1, there was a broad bulge, a left paracentral bulge causing mild lateral recess stenosis, and moderate left foraminal stenosis. (*Id.*) At L4-5, there was mild degerative disc but no stenosis. (*Id.*)

Dr. Idler prescribed a left L5-S1 transforaminal cortisone injection. He also

prescribed bilateral C6 and C7 transforaminal cortisone injections, which were to occur after the lumber injections. (*Id.*)

Dr. Battle examined plaintiff again on June 24, 2010, as a follow-up to plaintiff's elbow and shoulder x-rays. (*Id.* at 631.) Dr. Battle diagnosed plaintiff with chronic lumbar degenerative disc disease, narcotic addiction related to Vicodin, and depression. (*Id.*) Plaintiff returned to see Dr. Battle on July 7, 2010, complaining of fatigue, narcolepsy, memory loss, numbness in her arms, pain all over her body, and migraines. (*Id.* at 626.) Dr. Battle diagnosed plaintiff with chronic back pain, depression, and obesity. (*Id.*)

On July 22, 2010, Dr. Jonathan Mayhew ("Dr. Mayhew") reviewed plaintiff's medical records and performed a Psychiatric Review Technique. (*Id.* at 82.) Dr. Mayhew concluded that plaintiff displayed a "normal mood and affect, normal memory, [and] normal judgment and insight." (*Id.*) Like Dr. Perkins, Dr. Mayhew opined that plaintiff's mental impairment was not severe. (*Id.*)

On August 9, 2010, Dr. Alan Cohen ("Dr. Cohen") also reviewed plaintiff's medical records and performed a residual functional capacity test. (*Id.* at 83.) In Dr. Cohen's opinion, plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and walk approximately six hours in an eight-hour workday, and sit approximately six hours in an eight-hour workday. (*Id.* at 84.) Plaintiff's ganglion cyst in her left foot, left knee arthroscopy, and "changes on cervical and lumbar spine imaging" limited her ability to push and pull with her left lower extremities. (*Id.*) Plaintiff also suffered occasional postural limitations due to "mild disc bulges" in her cervical spine and lumbar spine. (*Id.*) Finally, Dr. Cohen

opined that plaintiff's GERD, sleep apnea, asthma, migraines, hernia, and periods of incontinence were not significant limitations. (*Id.* at 85.)

After plaintiff moved from North Carolina to New York, she began seeing Dr. Zeenat Hussain ("Dr. Hussain") for back and knee pain in March 2011. (*Id.* at 655.) Dr. Hussain ordered MRIs of plaintiff's cervical and lumbar spine, which were performed on March 29, 2011. (*Id.* at 652–53.) The cervical spine MRI showed a right parasagittal disc herniation that just touched the spinal cord at the C5-6, mild disc bulging at the C6-7, mild disc bulging at the C7-T1, and mild degenerative changes. (*Id.* at 652.) The lumbar MRI showed a right foraminal disc herniation at the L2-3, mild disc desiccation and bulging at L4-5, and disc desiccation at L5-S1. (*Id.* at 653.)

Dr. Hussain completed a paratransit eligibility form for plaintiff on June 22, 2011. (*Id.* at 270–72.) In that form, Dr. Hussain wrote that plaintiff suffered the following permanent conditions, which prevented her from walking long distances or standing for long periods of time: sciatica, spinal stenosis, osteoarthritis, and bulging and disintegrating discs in her back and neck. (*Id.* at 271.) In addition, Dr. Hussain noted that plaintiff suffered from arthritis, asthma, anxiety, and depression. (*Id.* at 270–71.) About one month later, on August 23, 2011, Dr. Hussain completed paperwork in support of plaintiff's handicapped parking permit application. (*Id.* at 654.) He noted that plaintiff suffered temporary back pain and morbid obesity, conditions he expected to last six months. (*Id.*)

Also on August 23, 2011, Dr. Hussain completed a medical evaluation form, in which he stated that he was treating plaintiff monthly for back and knee pain, that she had a history of hypertension, obesity, degenerative joint disease, and osteoarthritis, and that her prognosis was "good." (*Id.* at 655–56.) Dr. Hussain also completed a physical assessment for the Suffolk County Department of Social Services, in which he noted that plaintiff weighed 263 pounds after gastric bypass surgery. (*Id.* at 661–62.) Dr. Hussain opined that plaintiff was capable of sitting without limitation, could walk or stand for only one to two hours, and could lift only ten pounds occasionally. (*Id.* at 662.) He further opined that plaintiff could work only twenty hours per week. (*Id.*) Dr. Hussain noted that his diagnosis was based on positive straight leg raises. (*Id.* at 661.)

On August 25, 2011, social worker Patricia Belle ("Belle") conducted a psychiatric assessment of plaintiff. (*Id.* at 659–60.) Belle diagnosed plaintiff with generalized anxiety disorder but was unable to assess plaintiff's functional capacity. (*Id.*)

After the ALJ's September 13, 2011 decision, plaintiff provided the Appeals Council with an additional functional assessment performed by Dr. Fajal Faroum ("Dr. Faroum") on December 5, 2011. (*Id.* at 663–64.) Dr. Faroum treated plaintiff's asthma. (*Id.*) He opined that plaintiff was limited to walking, standing, sitting, and climbing stairs for less than one hour, and to lifting ten pounds occasionally. (*Id.* at 664.) Moreover, he opined that plaintiff could not work at all. (*Id.*)

3. The Administrative Hearing

Plaintiff testified before the ALJ on August 17, 2011. She explained that she had "bulging, disintegrating, and herniated discs in [her] back and in [her] neck" (*id.* at 47), and that she is "constantly in pain" there (*id.* at 53). In addition, she told the ALJ that she experiences "numbing in [her] arms and in [her] legs," for which she takes medication.

(*Id.*) For example, plaintiff explained that on one occasion, she was holding a cooking pan when her right hand went numb, and she dropped the pan. (*Id.* at 69.) On another occasion, plaintiff could not manage to cut breakfast sausage. (*Id.* at 69–70.) She acknowledged, however, that a conduction test revealed only mild carpal tunnel syndrome. (*Id.* at 53). With respect to her foot, plaintiff testified that the ganglion cyst in her left foot causes pain, usually when she is standing. (*Id.* at 68–69.)

Plaintiff also commented on her obesity, which, according to her doctors, lies at the root of many of her medical problems. (*Id.* at 66.) At the time of the hearing, she measured five feet one inch and 270 pounds (*id.* at 67); at her heaviest, she weighed 315 pounds (*id.*). As a result of her obesity, plaintiff does not wear socks or sneakers because she cannot bend down. (*Id.* at 66.)

Finally, plaintiff testified that she suffered from depression, anxiety and trouble sleeping at night. (*Id.* at 59.) With respect to her anxiety, plaintiff explained that she suffers anxiety attacks two to three times per day, during which she feels like her heart is pounding out of her chest. (*Id.* at 65.) She also mentioned that she has a history of migraines, high blood pressure, and asthma. (*Id.* at 60–61.)

## B. Procedural History

On November 18, 2009, plaintiff applied for disability insurance benefits and supplemental security income, alleging disability since September 18, 2009. (*Id.* at 189–96.) Plaintiff's application was denied initially on February 16, 2010 (*id.* at 121–25), and again on August 11, 2010 after reconsideration (*id.* at 129–46). Thereafter, on August 18, 2010, plaintiff requested a hearing. (*Id.* at 128.) Represented by counsel, plaintiff appeared and testified

before the ALJ at a hearing held on August 17, 2011. (*Id.* at 24.)

On September 13, 2011, the ALJ determined that plaintiff was not disabled under the SSA.[2] (*Id.*) The Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on February 17, 2013, appealing the ALJ's September 13, 2011 decision. The Commissioner answered on May 21, 2013, and filed the pending motion for judgment on the pleadings on July 17, 2013. Plaintiff also filed a motion for a judgment on the pleadings on August 19, 2013. The Commissioner replied on September 24, 2013, and plaintiff filed a reply on October 8, 2013. The Court has fully considered the submissions of the parties.

## II. Standard of Review

A district court may set aside a determination by an ALJ "only where it is based upon legal error or is not supported by substantial evidence." *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The Supreme Court has defined "substantial evidence" in Social Security cases to mean "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted); *see Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). Furthermore, "it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision

---

[2] The Court summarizes the ALJ's decision in detail *infra*.

must be upheld, "even if [the court] might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal citation and quotation marks omitted); *see also Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) ("Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner.").

## III. DISCUSSION

### A. Legal Standard

A claimant is entitled to disability benefits if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the SSA unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. *See* 20 C.F.R §§ 404.1520, 416.920. The Second Circuit has summarized this procedure as follows:

The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has

a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). The claimant bears the burden of proof with respect to the first four steps; the Commissioner bears the burden of proving the last step. *Brown*, 174 F.3d at 62.

The Commissioner "must consider" the following in determining a claimant's entitlement to benefits: "'(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.'" *Id.* (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

### B. Analysis

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and is the result of legal error. As set forth below, this Court concludes that this case

should be remanded to the Commissioner because the ALJ erred by failing to explain the weight he assigned to the opinion of plaintiff's treating physician, and by failing to properly assess the factors for determining what weight to give that opinion.

### 1. The ALJ's Decision

#### a. Substantial Gainful Activity

At step one, the ALJ must determine whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity is work activity that involves doing significant physical or mental activities," *id.* § 404.1572(a), and gainful work activity is work usually done for pay or profit, *id.* § 404.1572(b). Individuals who are employed are engaging in substantial gainful activity. In this case, the ALJ determined that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of September 18, 2009. (AR at 26.) Substantial evidence supports this finding, and plaintiff does not challenge its correctness.

#### b. Severe Impairment

If the claimant is not employed, the ALJ then determines whether the claimant has a "severe impairment" that limits his capacity to work. An impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c); *see also Perez*, 77 F.3d at 46. The ALJ in this case found that plaintiff had the following severe impairments: foot, leg, shoulder, neck, and back pain resulting from degenerative changes, a ganglion cyst, arthritis, GERD, obesity, anxiety, depression, asthma, and migraine headaches. (AR at 26.) The ALJ

concluded, however, that plaintiff's sleep apnea, carpal tunnel syndrome, and hypertension were not severe. Substantial evidence supports these findings, and plaintiff does not challenge their correctness.

#### c. Listed Impairment

If the claimant has a severe impairment, the ALJ next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the ALJ will find the claimant disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(d). In this case, the ALJ found that plaintiff's impairments did not meet any of the listed impairments in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 27.) Substantial evidence supports this finding, and plaintiff does not challenge its correctness.

#### d. Residual Functional Capacity

If the severe impairments do not meet or equal a listed impairment, the ALJ assesses the claimant's residual functional capacity "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). The ALJ then determines at step four whether, based on the claimant's residual functional capacity, the claimant can perform her past relevant work. *Id.* § 404.1520(f). When the claimant can perform her past relevant work, the ALJ will find that she is not disabled. *Id.*

In the instant case, the ALJ found that plaintiff had the residual functional capacity "to perform sedentary work . . . of a simple and unskilled nature" (*id.* at 29), but that she was "unable to perform any past relevant work" (*id.* at 32). In reaching this conclusion, the ALJ performed a lengthy recitation of the medical evidence. The ALJ

noted that plaintiff's neck and back pain "are the impairments causing the most limitation, along with her obesity." Specifically, the ALJ cited the medical evidence showing "minimal disc space narrowing, minimal endplate overgrowth, mild spondylosis, a loss of cervical lordosis, and mild disc bulging," and observed that her physicians have diagnosed "moderate degenerative disc disease and straightening of the cervical spine with some disc herniation." (*Id.* at 31.) Based on this evidence, the ALJ concluded that plaintiff maintains a sedentary residual functional capacity.[3] (*Id.*) In light of the evidence of plaintiff's anxiety and depression, and her testimony that she does not perform well in stressful situations, the ALJ further determined that plaintiff was limited to performing simple and unskilled work. (*Id.*)

The ALJ also found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 30.) The ALJ explained later in his decision that plaintiff's subjective allegations were "not supported by the objective medical evidence." (*Id.* at 31.) For instance, the ALJ noted that, although plaintiff "alleges that her back pain is extreme, medical imaging revealed mild bulging and minimal disc space narrowing at the most." (*Id.*) The ALJ further explained, "Despite [plaintiff's] testimony of debilitating pain, the evidence shows these impairments to be of a mild nature." (*Id.*)

As for the medical opinion evidence, the ALJ accorded "significant weight" to the conclusions of Dr. Detweiler and Dr. Watson, who reviewed x-rays of plaintiff's shoulder, elbow, cervical spine, and lumbar spine. (*Id.* at 32.) The ALJ gave only "some weight," however, to the opinion of Dr. Hussain, "who opined that the claimant could walk and stand for one to two hours, had no limitations sitting, and could perform at least part-time work for twenty hours per week." (*Id.*) Specifically, the ALJ determined that medical evidence supported Dr. Hussain's opinion concerning plaintiff's minimal limitations on sitting. (*Id.*) As for Dr. Hussain's opinion concerning plaintiff's ability to work only twenty hours per week, the ALJ concluded that no evidence supported this opinion and, accordingly, did not give Dr. Hussain's opinion "full weight." (*Id.*)

For the reasons set forth *infra*, the Court discerns legal errors in connection with the ALJ's assessment of plaintiff's residual functional capacity, and, in light of those errors, a remand is necessary because the Court cannot determine whether substantial evidence supports the decision. *Branca*, 2013 WL 5274310, at *11.

e. Other Work

At step five, if the claimant is unable to perform his past relevant work, the ALJ determines whether the claimant is capable of adjusting to performing any other work. 20 C.F.R. § 404.1520(g). To support a finding that an individual is not disabled, the Commissioner has the burden of demonstrating that other jobs exist in significant numbers in the national economy that claimant can perform. *Id.* § 404.1560(c); *see, e.g.*, *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

---

[3] "[I]n the Social Security context, a person must be able to lift ten pounds occasionally, sit for a total of six hours, and stand or walk for a total of two hours in an eight-hour workday to be capable of 'sedentary work.'" *Carvey v. Astrue*, 380 F. App'x 50, 52 (2d Cir. 2010) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 n.3 (2d Cir. 1999); 20 C.F.R. § 404.1567(a)).

In this case, the ALJ considered plaintiff's age, education, work experience, and residual functional capacity, in connection with the Medical-Vocational Guidelines set forth at Appendix 2 of Part 404, Subpart P of Title 20 of the Code of Federal Regulations, and found that plaintiff has the ability to perform a significant number of jobs in the national economy. (AR at 32–33.)

## 2. Treating Physician Rule

Plaintiff argues that the ALJ failed to accord the proper weight to her treating physician, Dr. Hussain. The Court agrees that the ALJ failed to apply the proper standard for evaluating the medical opinion of Dr. Hussain, and remands the case on this basis.

### a. Legal Standard

The Commissioner must give special evidentiary weight to the opinion of a treating physician. *See Clark*, 143 F.3d at 118. The "treating physical rule," as it is known, "mandates that the medical opinion of a claimant's treating physician [be] given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see, e.g., Rosa*, 168 F.3d at 78–79; *Clark*, 143 F.3d at 118. The rule, as set forth in the regulations, provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

Although treating physicians may share their opinion concerning a patient's inability to work and the severity of disability, the ultimate decision of whether an individual is disabled is "reserved to the Commissioner." *Id.* § 404.1527(d)(1); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.").

When the Commissioner decides that the opinion of a treating physician should not be given controlling weight, he must "give good reasons in [his] notice of determination or decision for the weight [he] gives [the claimant's] treating source's opinion." 20 C.F.R § 404.1527(c)(2); *see Perez v. Astrue*, No. 07-CV-958 (DLI), 2009 WL 2496585, at *8 (E.D.N.Y Aug. 14, 2009) ("Even if [the treating physician's] opinions do not merit controlling weight, the ALJ must explain what weight she gave those opinions and must articulate good reasons for not crediting the opinions of a claimant's treating physician."); *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 627 (S.D.N.Y 2006) ("Even if the treating physician's opinion is contradicted by substantial evidence and is thus not controlling, it is still entitled to

significant weight because the treating source is inherently more familiar with a claimant's medical condition than are other sources." (internal citation and quotation marks omitted)). Specifically, "[a]n ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). "Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell*, 177 F.3d at 133.

### b. Analysis

There was a legal error in the ALJ's decision because he failed to apply the proper standard for evaluating the medical opinion of Dr. Hussain, plaintiff's treating physician. Specifically, the ALJ did not note the weight that he assigned to the particular opinion of Dr. Hussain concerning plaintiff's ability to perform only part-time work. The ALJ stated that he was giving "[s]ome weight" to the overall opinion of Dr. Hussain because, while medical evidence supported Dr. Hussain's opinion concerning plaintiff's ability to sit, the evidence did not support Dr. Hussain's opinion concerning plaintiff's ability to work only twenty hours per week. (AR at 32.) The ALJ did not specify, however, the weight he accorded to Dr. Hussain's specific

opinion concerning plaintiff's ability to work part-time, although it appears that he gave no weight to that opinion. The ALJ's failure to specify the weight assigned to this particular opinion was error because it prevents this Court from determining whether the ALJ's decision was supported by substantial evidence. *Branca*, 2013 WL 5274310, at *12; *see, e.g.*, *Taylor v. Barnhart*, 117 F. App'x 139, 140–41 (2d Cir. 2004) (remanding case because ALJ "did not give sufficient reasons explaining how, and on the basis of what factors, [the treating physician's] opinion was weighed," and stating that "we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion" (internal citation and quotation marks omitted)); *Featherly v. Astrue*, 793 F. Supp. 2d 627, 631–32 (W.D.N.Y. 2011) (remanding case when ALJ's opinion contained only a "cursory discussion" of the reasons for assigning certain weight to two of plaintiff's treating physicians and failed to mention the weight assigned to the opinions of other treating physicians).

Even if the Court assumes that the ALJ rejected Dr. Hussain's opinion concerning plaintiff's ability to work, and assigned that opinion no weight, the ALJ erred by failing to consider the factors set forth in 20 C.F.R. § 404.1527(d)(2) to determine how much weight to give this opinion. "Even when an ALJ does not give controlling weight to a treating physician's opinion, the ALJ cannot give the opinion *no* weight without making certain findings." *Daniel v. Astrue*, No. 10-CV-5397 (NGG), 2012 WL 3537019, at *9 (E.D.N.Y. Aug. 14, 2012) (emphasis in original). Here, the ALJ concluded that Dr. Hussain's opinion concerning plaintiff's ability to work was unsupported by medical evidence. However, "[t]his statement relates only to the determination of whether Dr.

13

[Hussain's] opinion is entitled to controlling weight; it does not itself supply with sufficient specificity the 'good reasons' for the weight ultimately accorded that opinion such that this court might properly evaluate the ALJ's finding." *Smith v. Colvin*, No. 11-CV-4802 (NGG), 2013 WL 6504789, at *11 (E.D.N.Y. Dec. 11, 2013) (remanding for proper evaluation of treating physician's opinion, even though court agreed with ALJ that treating physician's opinion was not entitled to controlling weight); *see Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004) ("It is not enough for the ALJ to simply say that [the treating physician's] findings are inconsistent with the rest of the record."). Here, the ALJ did not discuss the evidence supporting Dr. Hussain's conclusion, *i.e.* the positive leg raising test noted in Dr. Hussain's report (AR at 661), and the MRIs of plaintiff's cervical and lumbar spine that Dr. Hussain had ordered and reviewed (*id.* at 652–53). Moreover, the ALJ never discussed the length of the treatment relationship plaintiff had with Dr. Hussain. These failures are grounds for remand. *See Branca*, 2013 WL 5274310, at *13; *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 431 (S.D.N.Y. 2010) (Report and Recommendation) (remanding to the Commissioner because "the ALJ never followed the analytical path mandated by regulation, which requires that he discuss the length of treating relationship, the expertise of the treating doctors, the consistency of their findings and the extent to which the record offers support for some or all of those findings").[4]

---

[4] Plaintiff also points out that the ALJ took no action to develop any records from Dr. Hussain before concluding that a portion of his opinion should be rejected because there was no evidence to support it. The Court notes that, on remand, the ALJ has an affirmative obligation to develop the record to the extent necessary to conduct the above analysis with respect to the opinions of the treating physician. *See,*

### 3. Plaintiff's Testimony

Plaintiff also contends that the ALJ erred in assessing her credibility in two respects. She asserts (1) that the ALJ applied the wrong legal standard in evaluating the credibility of her testimony, and (2) that the ALJ's findings were insufficient to discredit her testimony.

In support of her claim that the ALJ applied the wrong legal standard to assess her credibility, plaintiff seizes on the following statement in the ALJ's decision: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR at 30.) As the Seventh Circuit has noted, this boilerplate statement "gets things backwards" because "the passage implies that ability to work is determined first and is then used to determine the claimant's credibility." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). "The requirements of 20 C.F.R. § 404.1529(c)(4) provide that the ALJ must make a credibility assessment *before making a [residual functional capacity] assessment*, because the credibility assessment is used to determine Plaintiff's limitations and [residual functional capacity]." *Faherty v. Astrue*, No. 11-CV-2476 (DLI), 2013 WL 1290953, at *16 (E.D.N.Y. Mar. 28, 2013) (emphasis added). "Therefore, the ALJ cannot claim that Plaintiff's testimony is not credible because it is inconsistent with the [residual functional capacity], when that testimony, in part, should be used to determine the [residual functional capacity]." *Id.* However, this erroneous boilerplate language does not require a remand "[i]f the ALJ has otherwise explained his conclusion adequately." *Filus*

---

*e.g., Hernandez v. Astrue*, 814 F. Supp. 2d 168, 188 (E.D.N.Y. 2011).

*v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). In the instant case, the ALJ offered reasons for discrediting plaintiff's testimony that were grounded in objective medical evidence. Accordingly, the Court does not discern reversible error in the legal standard by which the ALJ assessed plaintiff's credibility.

Even if the ALJ applied the proper legal standard, plaintiff contends that his findings did not support his ultimate conclusion to discredit plaintiff's testimony. The Court does not reach this issue at this juncture because "[t]he ALJ's determination that [plaintiff's] allegations were inconsistent with the medical evidence was tainted by the ALJ's failure to properly evaluate the opinions of [plaintiff's] treating physicians—a failure that would naturally have affected how the ALJ viewed the totality of the medical evidence." *Daniel*, 2012 WL 3537019, at *11; *see Sutherland*, 322 F. Supp. 2d at 291. On remand, the ALJ shall examine plaintiff's subjective complaints "in light of the ALJ's fresh evaluation" of Dr. Hussain's opinion concerning plaintiff's ability to work. *Id.* Also on remand, the ALJ should be careful to determine plaintiff's credibility before, and independently from, the residual functional capacity determination. *See Faherty*, 2013 WL 1290953, at *16.

4. Plaintiff's Obesity

Finally, plaintiff asserts that the ALJ failed to give adequate consideration to her obesity. The Court disagrees.

Under Social Security Ruling 02-1p, 67 Fed. Reg. 57,859 (Sept. 12, 2002) ("SSR 02-1p"), "[o]besity is not in and of itself a 'disability,' but the Social Security Administration considers it to be a medically determinable impairment, the effects of which should be considered at the various

steps of the evaluation process, including steps three and four." *Polynice v. Colvin*, No. 8:12-CV-1381 (DNH/ATB), 2013 WL 6086650, at *6 (N.D.N.Y. Nov. 19, 2013); *see, e.g.*, *Cruz*, 941 F. Supp. 2d at 499–500. Courts have held that "'an ALJ's failure to explicitly address a claimant's obesity does not warrant remand.'" *Cruz*, 941 F. Supp. 2d at 499–500 (quoting *Guadalupe v. Barnhart*, No. 04 CV 7644 (HB), 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005)). Rather, "[w]hen an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions." *Guadalupe*, 2005 WL 2033380, at *6 (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)).

Here, the ALJ determined that plaintiff's obesity was a severe impairment while making explicit reference to SSR 02-1p (AR at 26), stated that plaintiff's neck and back pain "along with her obesity" were "the impairments causing the most limitation" (*id.* at 31), and determined that "the combination of [plaintiff's] physical impairments warrants a sedentary residual functional capacity" (*id.*). This analysis demonstrates that the ALJ adequately considered plaintiff's obesity. *See, e.g.*, *Miller v. Astrue*, No. 11-CV-4103 (DLI), 2013 WL 789232, at *11 (E.D.N.Y. Mar. 1, 2013) (ALJ gave adequate consideration to plaintiff's obesity where ALJ listed obesity as one of plaintiff's severe impairments, "stated specifically that she took into account Social Security Ruling 02-1p," "acknowledged that Plaintiff's obesity could have an adverse impact on other impairments," and discussed diagnoses of plaintiff's doctors, who had taken plaintiff's obesity into account). The ALJ was not required—as plaintiff contends—to provide any further, detailed explanation as to how plaintiff's obesity factored into his

determination of her residual functional capacity.

IV. CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's cross-motion for judgment on the pleadings is denied, but plaintiff's motion to remand is granted. The case is remanded to the ALJ for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Date:   January 9, 2014
          Central Islip, NY

* * *

Plaintiff is represented by Charles E. Binder, Law Offices of Harry J. Binder and Charles E. Binder, P.C., 60 East 42 Street, Suite 520, New York, NY 10165. Defendant is represented by Loretta E. Lynch, United States Attorney, Eastern District of New York, by Robert W. Schumacher II, 610 Federal Plaza, Central Islip, NY 11722.